**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

---

**GRANT BROWN, MELISSA BROWN, ALFRED DIEBOLT, and SUMMIT REAL ESTATE SERVICES LLC,**

**Plaintiffs,**

**v.** **Civil Action No. __________**

**JURY TRIAL DEMANDED**

**ACUITY, A MUTUAL INSURANCE COMPANY,**

**Defendant.**

---

**COMPLAINT**

---

COME NOW the Plaintiffs, Grant Brown, Melissa Brown, Alfred Diebolt, and Summit Real Estate Services LLC, and for their Complaint against the Defendant, Acuity, A Mutual Insurance Company, state as follows:

**PARTIES, VENUE, & JURISDICTION**

1. Plaintiff Grant Brown is an individual citizen of the State of California.

2. Plaintiff Melissa Brown is an individual citizen of the State of California.

3. Plaintiff Alfred Diebolt is an individual citizen of the State of California.

4. Plaintiff Summit Real Estate Services LLC ("Summit") is a limited liability company formed under the laws of the State of California with its principal office also located in the State of California. Summit is a single member limited liability company, and its one member is a citizen of the State of California. For jurisdictional purposes, Summit is a citizen of California.

5. Grant Brown, Melissa Brown, Alfred Diebolt, and Summit Real Estate Services LLC shall collectively be referred to as "Plaintiffs".

6. At all times relevant hereto, Plaintiffs owned the commercial property located at and around 5422 Eagle Industrial Ct., Hazelwood, St. Louis County, Missouri 63042, which is covered by the Policy (defined below) and identified as Premises Number 2, Building Number 1 therein (the "Insured Premises").

7. Defendant, Acuity, A Mutual Insurance Company ("Defendant"), is an insurance company organized and existing under the laws of the State of Wisconsin with its principal place of business located in Wisconsin. Defendant is licensed to, and does conduct, insurance business in the State of Missouri, including St. Louis County, Missouri. For jurisdictional purposes, Defendant is a citizen of Wisconsin.

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332 because Plaintiffs and Defendant are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. Venue is proper in this District pursuant to 28 USC § 1391 because the Insured Premises is situated in this District, and the events giving rise to the claim upon which this suit is based occurred in this District.

## GENERAL ALLEGATIONS

### The Policy

10. At all times relevant hereto, Plaintiffs were insured pursuant to an insurance contract whereby Defendant agreed to insure the Insured Premises against property damage, bearing Policy No. ZN3278 (the "Policy"). A copy of the Policy is attached as ***Exhibit 1*** to this Complaint and is incorporated herein by reference as if set forth verbatim. As relevant hereto, the

term of the policy was June 23, 2023, to June 23, 2024 (although Defendant had insured the Insured Premises via predecessor policy(ies)).

11. The Policy provided insurance coverage for direct physical loss of or damage to the Insured Premises. The Policy is an "all risks" policy, which means that it provides insurance coverage for direct physical loss of or damage to covered property within the policy period, except as specifically excluded or limited by the Policy.

12. The Policy's coverage for the Insured Premises was on a replacement cost valuation basis, which means that coverage is provided on a replacement cost basis without deduction for depreciation.

13. The Policy provided a limit of insurance coverage for the Insured Premises in the amount of $12,204,000.

14. The Policy includes a wind and hail deductible of 1% of the limit of coverage for the Insured Premises. The deducible amounts to $122,040.

15. Pursuant to the Policy, Plaintiffs paid a premium to Defendant in exchange for insurance coverage. Plaintiffs paid the required premiums at all times relevant to this Complaint.

<u>The Loss</u>

16. On or about May 26, 2024 and/or at other times during the term of the Policy, a severe storm event involving large hail and strong winds struck the Insured Premises causing substantial damage (the "Loss").

17. As a result of the Loss, the Insured Premises suffered direct physical loss and damage, including but not limited to, damages to the roof and other exterior components.

18. The Policy was in effect at the time of the Loss.

19. As it relates to the Loss, there is no applicable exclusion or limitation.

20. The damage is visible to the naked eye and was clearly caused by hail.

21. The damage caused by the Loss requires replacement of the roofing system, among other things (*e.g.*, replacement of rooftop metal appurtenances, rooftop heating and air-conditioning units, etc.)

<u>The Insurance Claim & Investigation</u>

22. Plaintiffs promptly notified Defendant of the Loss, and Defendant assigned a claim number – SP2526.

23. Defendant retained Haag Engineering ("Haag") to inspect the Insured Premises.

24. Haag inspected the Insured Premises on or about October 14, 2024. Haag was accompanied by representatives of HailSolve Inc. (a general contracting firm retained by Plaintiffs) ("HailSolve") during its inspection.

25. During Haag's inspection, HailSolve informed Haag that HailSolve inspected the Insured Premises in April 2024 (before the Loss) and that during the April 2024 inspection, HailSolve had not located any hail damage to the roof of the Insured Premises. HailSolve also informed Haag that it inspected again in June 2024 (after the Loss) and located significant hail damage to the roof of the Insured Premises. HailSolve provided Haag with its pre-loss, June 2024 site inspection photographs.

26. In its written report issued after its inspection, Haag issued a report to Defendant that noted, in part: (1) hail up to 1.5" in diameter was documented by the National Weather Service Storm Events Database approximately 1.3 miles from the Insured Premises; (2) spatter marks indicative of recent hail (less than a year or so) were found at the Insured Premises; (3) hail caused dents to metal components and rooftop heating/air-conditioning units atop the roof of the Insured

Premises; and (4) many areas of the roofing “exhibited small pieces of brittle asphalt coating that were missing.” Nonetheless, Haag concluded that the roof was “not damaged by hail.”

27. By letter dated October 28, 2024, Defendant asserted that the Loss did not damage the Insured Premises. Based on its position, Defendant denied Plaintiffs’ claim and refused to issue payment.

28. Plaintiffs engaged a meteorologist to provide a report of the meteorological conditions at the Insured Premises on the date of the Loss. The meteorologist issued a report dated February 18, 2025 that confirmed that on May 26, 2024 (the date of the Loss), hail of up to 1.25”, accompanied by strong winds, impacted the Insured Premises.

29. Plaintiffs also engaged a licensed professional engineer to inspect the Insured Premises. The engineer inspected the Insured Premises on March 21, 2025, and issued a report dated June 19, 2025 that confirmed that the Loss damaged the Insured Premises, necessitating, among other things, removal and replacement of the roof down to the deck.

30. Plaintiffs provided the engineering report and the meteorological report to Defendant via cover letter dated June 25, 2025. Plaintiffs also requested that Defendant reconsider its position on the claim for the Loss.

31. After Plaintiffs’ June 25, 2025 letter, Defendant retained Engle Martin (an independent adjusting firm) to inspect the Insured Premises. During Engle Martin’s 2025 inspection, it confirmed to Plaintiffs’ contractor, HailSolve, that certain exterior components were damaged by the Loss.

32. Specifically, during and/or after Engle Martin’s inspection, it informed HailSolve that it intended to write an estimate for full roof replacement, among other things.

33. However, on or about July 23, 2025, Engle Martin issued an estimate for $27,651.33 (replacement cost value) and $10,879.15 (actual cash value) that failed to include a full roof replacement, instead limiting the estimate to certain soft metals and other things.

34. Upon information and belief, Engle Martin initially advised Defendant that the Loss was approximately $1.5 Million, but subsequently removed all roofing components from its estimate, ultimately resulting in the $27,651.33 estimate referenced above.

35. Purportedly based on Engle Martin's findings and July 23, 2025 estimate, Defendant issued a letter dated August 12, 2025, accepting coverage for the Loss, but refusing to issue payment, as it alleged that the amount of loss fell below the Policy's deductible.

36. Defendant's assertions regarding the scope of loss, scope of necessary repairs, and means and methods of repairs were factually false and inadequate.

37. Defendant's assertion regarding the amount of loss was factually false and is significantly less than the amount of loss actually incurred to the Insured Premises as a result of the Loss. Defendant's valuation of the Loss failed to include all of the hail-caused damage to the Insured Premises.

<u>Plaintiffs' Damages & Defendant's Refusal to Issue Full Payment</u>

38. Plaintiffs contend that the amount owed exceeds $1,000,000.

39. As pricing increases over time due to inflation (among other factors), the amount of the replacement/repair cost for the corrective actions may increase.

40. Plaintiffs cannot make the necessary repairs without the insurance benefits to which they are entitled, and Defendant's refusal to issue payment for the same has prevented Plaintiffs from making the necessary repairs.

The Loss is Compensable Pursuant to the Policy

41. Hail damage is covered by the Policy.

42. Plaintiffs fulfilled all duties after the Loss that were imposed upon them by the Policy.

43. All conditions precedent to obtaining payment of benefits under the Policy have been complied with, met, waived by Defendant, or otherwise satisfied.

44. Despite the significant, undeniable, and obvious hail damage to the Insured Premises and the fact that Plaintiffs are at no fault in this matter, Defendant has wrongfully refused to pay Plaintiffs' claim in full, in contravention of the express terms and conditions of the Policy, as well as Missouri law.

45. Pursuant to the Policy's terms, Defendant is obligated to pay Plaintiffs for the Loss they suffered. Nonetheless, Defendant has breached—and continues to breach—its obligations to Plaintiffs by failing and refusing to tender to Plaintiffs the insurance benefits due and owing under the Policy and by failing to compensate Plaintiffs fully for this covered loss.

46. Defendant has failed to fully indemnify Plaintiffs for the damage to the Insured Premises, as required by the Policy.

47. To date, Defendant has failed to fully and properly pay Plaintiffs' claim, as required by the Policy.

48. Defendant's failure and refusal to fully pay for the Loss is without reasonable cause or excuse, and there is no reasonable coverage dispute concerning the Loss.

49. Defendant's failure to and refusal to pay for the Loss is a material breach of the Policy and is without justification.

**COUNT I**

**Breach of Contract**

50. Plaintiffs incorporate by reference all of the above paragraphs as if fully set forth herein.

51. The Policy issued by Defendant to Plaintiffs is a binding contract and is supported by valid consideration.

52. It is Defendant's contractual obligation to pay the amounts due under the Policy for the covered Loss, including the cost of all necessary repairs and/or replacements.

53. Defendant is in material breach of the Policy, and Defendant is liable to Plaintiffs in the maximum amount allowed by the Policy for the Loss. Specifically, Defendant breached its contract with Plaintiffs by its failure and refusal to fully and promptly pay the amounts owed to Plaintiffs as a result of the Loss and as required by the terms of the Policy.

54. As a result of Defendant's breach of contract, Plaintiffs sustained substantial compensable losses for the amounts claimed under the Policy, including but not limited to, amounts owed pursuant to the Policy for the damage to the Insured Premises and all other amounts to which Plaintiffs are contractually entitled pursuant to the Policy, as well as consequential damages, plus interest thereon.

55. Defendant's actions and breaches have further caused Plaintiffs great and substantial harm due to the fact that Plaintiffs have been unable to repair and/or replace the damage caused by the Loss as a result of the financial hardship unduly placed upon them as a direct and proximate result of Defendant's failure to pay Plaintiffs the proper amounts as required by the Policy.

56. By reason of Defendant's breach, Plaintiffs have been deprived of the benefits due and owing under the Policy.

57. Defendant is liable to Plaintiffs for their Loss.

58. As a direct and proximate result of Defendant's breach of the terms of the insurance contract, Plaintiffs have suffered and continue to suffer damages, which are in excess of $75,000.

**WHEREFORE**, Plaintiffs pray this Court enter an award against Defendant for: compensatory damages, consequential damages, pre-judgment interest, costs of this action, specific performance, and such other and further relief this Court may deem just and proper.

## COUNT II

### Vexatious Refusal to Pay - Mo. Rev. Stat. § 375.420

59. Plaintiffs incorporate by reference all of the above paragraphs as if fully set forth herein.

60. Despite proper demand for payment of the coverage provided under the terms of the Policy, Defendant has failed, neglected, and refused to make full payment to Plaintiffs under, and in accordance with, the terms and provisions of the Policy.

61. Further, Defendant intentionally refused to pay without reasonable cause or excuse, as evidenced, in part, by Defendant's actions as described below:

a. Defendant misrepresented: (i) the facts regarding the investigation of Plaintiffs' claim; and (ii) the Policy provisions relating to Defendant's coverage and payment obligations;

b. Defendant failed to attempt in good faith to effectuate the coverage provisions provided by the Policy;

c. Defendant failed and refused to attempt in any reasonable manner to undertake adequate claim investigation efforts and ignored facts and evidence making coverage and the amounts owed clear, obvious, and apparent;

d. Defendant refused and failed to conduct a reasonable investigation of Plaintiffs' claim based on all available information;

e. Defendant refused and failed to obtain all reasonably available information and generally ignored Plaintiffs' valid claim;

f. Defendant failed to adopt, implement, and enforce reasonable standards for the prompt investigation and settlement of claims arising under its insurance policies;

g. Defendant failed to promptly provide Plaintiffs with a reasonable explanation for its refusal to fully and properly pay Plaintiffs' claim in full;

h. Defendant failed to timely and fully pay all amounts due and owing under the Policy with no reasonable or justifiable basis;

i. Defendant made untrue, false, and fabricated representations regarding the existence of damage, the coverage provided by the Policy, and the amount of loss, all while Defendant knew that these representations were untrue;

j. Defendant failed to promptly provide a reasonable and accurate explanation of its justifications and reasons for not paying Plaintiffs' claim in full; and

k. Defendant engaged in such other acts toward Plaintiffs that are contrary to the duties owed to Plaintiffs as established by the customs and practices in the industry, the law, and the Policy.

62. Defendant's refusal to pay Plaintiffs the amounts due and owing under the policy of insurance is vexatious and without reasonable cause or excuse, and Plaintiffs are entitled to the relief and remedies provided under Mo. Rev. Stat. § 375.420, including additional damages from Defendant in the amount of twenty percent (20%) of the first fifteen hundred dollars ($1,500) of

the loss, ten percent (10%) of the amount of the loss in excess of fifteen hundred dollars ($1,500) and a reasonable attorney's fee.

**WHEREFORE**, Plaintiffs pray this Court enter an award against Defendant for vexatious damages to be calculated pursuant to Mo. Rev. Stat. § 375.420, including a reasonable attorney's fee, and such other further relief this Court may deem just and proper.

**JURY DEMAND**

Plaintiffs demand a jury.

Dated: October 1, 2025

**McWHERTER SCOTT & BOBBITT, PLC**

/s/ _Clinton H. Scott_________
CLINTON H. SCOTT
(MO Bar #71257)
54 Exeter Rd., Ste. D
Jackson, Tennessee 38305
Telephone: (731) 664-1340
Facsimile: (731) 664-1540
clint@msb.law

*Attorneys for Plaintiff*